1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9
10
11

ROBERT GLEN MISTRIEL,

            Plaintiff,

   v.

KERN COUNTY, et al.,

            Defendants.

_____/

CASE NO. 1:03-cv-06922-AWI-SKO

**FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN DEFENDANTS, TO FIND THAT PLAINTIFF STATES COGNIZABLE CLAIM AGAINST SOME DEFENDANTS, ORDER SERVICE OF THE THIRD AMENDED COMPLAINT**

**OBJECTIONS DUE: 30 DAYS**

## I.  INTRODUCTION

Plaintiff, Robert Glen Mistriel ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed a third amended complaint ("TAC") on October 12, 2010.  Plaintiff states that his claims arise under 42 U.S.C. § 1983 for violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights.

## II.   FACTUAL BACKGROUND

Plaintiff claims the following individuals were members of an organization called The Lords of Bakersfield ("LOB"):  Ed Jagels ("Jagels"), Al Leddy ("Leddy"), Steven Tauzer ("Tauzer"), Edwin Buck ("Buck"), Bob Patterson ("Patterson"), Glen Fitts ("Fitts"), Don Rogers ("Rogers"), Stan Harper ("Harper"), Alfred 'Ted' Fritts ("Fritts"), Hurbert 'Eli' Elias ("Elias"), and Tommy

Tarver ("Tarver").  Plaintiff contends that the LOB is a group of men who seeks out and molests young boys.

Plaintiff claims that, after Defendant Tarver was murdered in 1978, authorities suspected Plaintiff's involvement.  (TAC at 11:8-9.)  Ultimately, he was removed from the custody of his mother, made a ward of the court, and was eventually placed in the care of defendants San Felipe Boys Home ("SFBH"), Sally Rockholt ("Rockholt"), Kern County Probation Department ("KCPD"), Glen Brown ("Brown"), Bakersfield Police Department ("BPD"), and Child Protective Services ("CPS").[1]  (TAC at 11:13-17.)   He alleges that the acquisition of custody, i.e., placement outside his mother's home, was "affirmative government action which gave rise to and created a 'special relationship' between the state, CPS, City of Bakersfield, Kern County, CPS, Rockholt, SFBH, KCPD, Brown, BPD, Fitts, Patterson, and certain other does."[2]  (TAC at 11:22-26.)

Plaintiff claims that, while he was a ward of the court or otherwise the responsibility of the government after being removed from his mother's home, the LOB Defendants were continuously permitted to remove him from his placement at the SFBH.  (TAC at 11:9-19; 11:20-25.)  During temporary removals from SFBH, Plaintiff claims he was drugged, physically and sexually abused, and exploited through child pornography, before being returned to those entrusted with his care at SFBH. (TAC at 14:6-14.) Plaintiff alleges that, despite informing SFBH, Rockholt, Brown, KCPD, CPS, Patterson and unnamed others of the abuse he received at the hands of various LOB Defendants when they removed him from SFBH, he was "completely rebuffed."  (TAC at 14:9-11.)

---

[1] Plaintiff's "custody" situation is unclear.  Plaintiff's complaint implies that he was considered a ward of the court as a juvenile offender, was released, and was then placed outside his mother's home because she could not care for him.  It is unclear which agencies, departments, or municipalities participated in any of these proceedings.  His allegations in this regard are as follows:

> Following the 1978 murder of Tarver and authoritie[s'] suspicions of Plaintiff['s] involvement, Plaintiff was detained and made a ward of the court.  Following his release and a sustained petition rendering Plaintiff['s] biological alcoholic mother unfit to care [for] and protect Plaintiff, Plaintiff against his will was placed under the custody of the state . . . .

(TAC at 11:8-15.)

[2] Allegations regarding who was responsible for Plaintiff's placement while he was in the "custody" of governmental groups and individuals and who oversaw his placement are unclear.  In one allegation related to those who had custody of Plaintiff he does not identify Fitts and Patterson as participants and in another allegation, he identifies them as participants. (*Compare* TAC at 11:13-17 *with* TAC at 11:22-26.)

Plaintiff also alleges that the LOB defendants would attend parties or social gatherings, sometimes during work breaks or while on duty, at which time they would exploit Plaintiff and other youths through child pornography.  (TAC at 14:23-26 - 15:2-6; 15:10-11.)  Plaintiff asserts that he was "utilized as a scout to recruit other unwary youths."  (TAC at 15:2-13.)

Plaintiff contends that, despite having an opportunity and a duty to stop Plaintiff from being harmed, Defendants Rockholt, KCPD, Brown, SFBH, CPS, Harper, Rogers, Elias, Jagels, Leddy, Buck, Patterson, BPD, and City of Bakersfield refused to do so.  (TAC at 16:2-10.)  Instead, these defendants "acquiesced, condoned, and ratified these acts by concealing them and through [their] government and political influences, indemnified each other from criminal persecution and ramification[s]."  (TAC at 16:20-24.)

Plaintiff further claims the following individuals, businesses, municipalities, and municipal departments knew of the abuse and, despite a duty to intervene, allowed it to continue:  Patterson, Fitts, the County of Kern, Kern County District Attorney's Office ("KCDAO"), Kern County Personnel Board ("KCPB"), KCPD, Brown,  Rockholt, City of Bakersfield, BPD, SFBH, the Bakersfield California Newspaper, Eli's Clock Emporium, and CPS.

Plaintiff claims the following municipalities, municipal departments or sub-units, and supervisors are liable for implementing and maintaining deficient policies and customs: County of Kern, City of Bakersfield, KCDAO, Jagels, Leddy, Tauzer, KCPB, Buck, KCPD, Brown, BPD, Patterson, Fitts, Rogers, and CPS.  Plaintiff claims the policies and customs were the "proximate cause and moving force behind each of the alleged violations."  The allegedly deficient policies include:

> 1) failing to properly train and educate all officers and personnel in applicable laws and in which to detect through observation and interaction signs of child physical and sexual abuse; 2) failing to adequately supervise employees and children charged to their care or employ; 3) failing to properly discipline employees refusing to adhere to and enforce the law faithfully; 4) failing to investigate complaints and claims of physical or sexual abuse or any other instance in which abuse of authority is alleged despite how blatant the wrongdoing; 5) permitting the circumvention of arrest and prosecution o[f] LOB members; 6) permitting the repeated falsification of reports with impunity; 7) repeated and deliberate failures to pursue and discover known offenders who were known to be prone to child sexual abuse, constitutional violations and/or cover ups and who were employed by or contracting with any state, county or city agency mentioned herein; 8) permitting the faulty and fraudulent convictions of innocent persons with impunity; 9) permitting the falsification or

malicious withholding of material evidence or the destruction of such evidence with impunity; 10) failing to properly assign and monitor adequately troublesome personnel especially those responsible for the placement, safekeeping, and protection of children; 11) systematically discouraging and ignoring early reports and claims of child exploitation, and physical/sexual abuse through intimidation and violence; 12) deliberately refusing and failing to apprehend identified and responsible child abusers and predators and bring to justice those responsible for said abuse; 13) permitting LOB members or associates to manipulate and bribe officials from reporting or arresting them through egregious abuses of authority; and, 14) refusing to report flagrant abuses of power and authority of any mentioned state, county or city employee.

(TAC at 22-23.)[3]

## III.   DISCUSSION

### A.   Screening Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  Id. §§1915A(b)(1), (2), 1915(e)(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  Id. § 1915(e)(2).  If the Court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

### B.   Legal Standard

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a).  Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

---

[3] The Court makes no finding regarding the applicable statute of limitation in this case or Plaintiff's argument that his claims have been tolled under California Code of Civil Procedure § 340.1.  (*See* Doc. 31.)

accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability. . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.  *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

**C.    Claims Against Municipal Departments and Sub-Units Should Be Dismissed**

Plaintiff attempts to set forth Section 1983 claims for Fourteenth Amendment violations against the Kern County Probation Department, the Kern County District Attorney's Office, the Kern County Personnel Board, the Bakersfield Police Department, and Kern County's Child Protective Services Department.

While Section 1983 is not itself a source of substantive rights, it provides a cause of action against any *person* who, under color of law, deprives an individual of federal constitutional rights or limited federal statutory rights.  42 U.S.C. § 1983; *Grahm v. Connor*, 490 U.S. 386, 393-94 (1989).  The term "persons" encompasses state and local officials sued in their individual capacities, private individuals, and entities which act under the color of state law and local governmental entities.  *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996).  However, the entities named above are all municipal *departments* and *sub-units* of local governments and are not generally considered "persons" within the meaning of Section 1983.  *See United States v. Kama*, 394 F.3d 1236, 1239 (9th Cir. 2005) (Ferguson, J., concurring) (noting that municipal police departments and bureaus are generally not considered "persons" within the meaning of Section 1983); *Vance*, 928 F. Supp. at 995-96 (dismissing *sua sponte* Santa Clara Department of Corrections as improper defendant); *Jewett v. City of Sacramento Fire Dep't*, No. CIV. 2:10-556 WBS KJN, 2010 WL 3212774, at *2 (E.D. Aug. 12, 2010) (finding fire department not a "person" under Section 1983 and dismissing suit against it); *Wade v. Fresno Police Dep't*, No. Civ. 09-0588 AWI DLB, 2010 WL

2353525, at *4 (E.D. Cal. June 9, 2010) (finding police department is not a "person" under Section 1983); *Morris v. State Bar of Cal.*, No. Civ. 09-0026 LJO GSA, 2010 WL 966423, at *3 (E.D. Cal. Mar. 11, 2010) (finding that a fire department is a municipal department and therefore not a "person" under Section 1983); *Sanders v. Aranas*, No. 1:06-CV-1574 AWI SMS, 2008 WL 268972, at *3 (E.D. Cal. Jan 29, 2008) (finding Fresno Police Department improper defendant because it is a sub-division of the City of Fresno); *Brockmeier v. Solano Cnty. Sheriff's Dep't*, No. Civ-S-05-2090 MCE EFB PS, 2006 WL 3760276, at *4 (E.D. Cal. Dec. 18, 2006) (dismissing Sheriff's Department as an improperly named defendant for purposes of Section 1983). Therefore, these departments and sub-units should be dismissed as improper defendants under Section 1983.

Moreover, Plaintiff has also named the County of Kern and the City of Bakersfield as defendants; naming sub-units of these municipalities as defendants is redundant. *See Abeytia v. Fresno Police Dep't,* No. 1:08-cv-01528 OWW GSA, 2009 WL 1674568, at *9 (E.D. Cal. June 12, 2009) ("Naming the [Fresno Police Department], which is a department of the City, as a defendant is redundant to naming the City of Fresno as a defendant."). Therefore, the sub-unit defendants should be dismissed.

**D.    Claims Alleging Fourth, Fifth, and Eighth Amendments Violations**

Plaintiff claims that his rights under the Fourth, Fifth, and Eighth Amendment were violated. Plaintiff claims that:

> [e]ach defendant violated Plaintiff's liberty interest under the Fourth, Fifth, Eighth and Fourteenth Amendments to be free of seizure of his person, to liberty, life, personal security, pursuit of happiness, bodily integrity and through acting with deliberate indifference to the known and obvious dangers and risks posed to Plaintiff which were affirmatively created by Defendants.

(TAC at 18:3-12.) It is not clear how any of these constitutional amendments are implicated by the factual allegations in Plaintiff's complaint.

**1.    Fourth Amendment Violations**

The Fourth Amendment pertains to governmental searches and seizures, and does not apply to actions of private citizens. U.S. CONST. AMEND. IV; *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) ("This Court . . . consistently construed this protection as proscribing only governmental action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a

private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting))).  Plaintiff's only allegations of unreasonable seizure of his person relate to actions taken by the LOB Defendants who, as explained, *infra*, were acting as private citizens. Therefore, Plaintiff was not "seized" within the meaning of the Fourth Amendment.

### 2.       Fifth Amendment Violations

The Fifth Amendment prohibits the federal government from depriving an individual of "life, liberty or property, without due process of law."  U.S. CONST. AMEND. V.  Because the Fifth Amendment relates to actions taken by the federal government, and Plaintiff has only alleged actions taken by state and local officials, Plaintiff's claims are more properly construed under the Due Process Clause of the Fourteenth Amendment rather than the Fifth Amendment.  *See Lee v. City of L.A.*, 250 F.3d 668, 687 (9th Cir. 2001) ("The Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government – not to those of state or local governments." (citing *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981))).  Plaintiff's claim brought pursuant to the Fifth Amendment is not viable.

### 3.       Eighth Amendment Violations

The Eighth Amendment prohibits federal and state governments from imposing cruel and unusual punishments against individuals convicted of crimes.  U.S. CONST. AMEND. VIII.  Plaintiff alleges that throughout his "custody," he was "punished through sexual and physical abuses, rapes and exploitation," that the abuse occurred under threat of "repulsive retributions [sic] should Plaintiff and other youths offer the slightest form of resistance," and that "corporal punishments inflicted included but were not limited to bondage and group anal penetration, physically nude beatings with leather whips and other torturous devises/apparatus; forceful anal penetration with foreign objects of collosal magnitude and false imprisonment in an underground pool for extended durations." (TAC at 15:18-25.)

The allegations of the complaint indicate that the punishments imposed on Plaintiff were not by the federal or state government in response to a crime he had been convicted of committing, but instead were the actions of private individuals.  Therefore, Plaintiff's complaint fails to support his

assertion that he has been "punished" within the meaning of the Eighth Amendment.

### 4.   Conclusion

Although these deficiencies have been explained to Plaintiff and he has been given three previous opportunities to cure his complaint, Plaintiff fails to set forth a cognizable Section 1983 claim for violations of his Fourth and Eighth Amendment rights.  Plaintiff's claims against local governments under the Fifth Amendment are simply not viable and any amendment would be futile. The Court recommends that these claims be dismissed with prejudice.

## E.   Claims Alleging Fourteenth Amendment Violations

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  To state a claim pursuant to Section 1983, a plaintiff must plead that the defendants acted under color of state law at the time the act complained of was committed and that the defendants deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

### 1.   Acting Under Color of State Law

The Constitution protects individual rights only from government action and not from private action; it is only when the government is responsible for the specific conduct of which the plaintiff complains that individual constitutional rights are implicated.  *Single Moms, Inc. v. Mont. Power Co.*, 331 F.3d 743, 746-47 (9th Cir. 2003).  Generally, private parties are not acting under color of state law.  *See Price v. Hawaii.*, 939 F.2d 702, 707-08 (9th Cir. 1991).  Therefore, a Section 1983 plaintiff must show that a defendant's actions are fairly attributable to the government, which generally involves significant state involvement in the action in question.  *Franklin v. Fox*, 312 F.3d 423, 444-45 (9th Cir. 2002).

1        a.      **Government Officials**

2            i.      **Scope of Employment**

3        Plaintiff claims that Jagels, Leddy, Tauzer, Rogers, Buck, Patterson and Fitts were members

4   of LOB and, as such, were parties to Plaintiff's physical and sexual abuse. (TAC at 13:9-23.) Each

5   of these defendants was assertedly employed by the government, or held public office. (TAC at 4-6,

6   ¶¶ 3, 4, 6, 9, 16, 17, 19.)  However, "[i]f a government officer does not act within his scope of

7   employment or under color of state law, then that government officer acts as a private citizen." *Van

8   Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (citing *Martinez v. Colon*, 54 F.3d 980,

9   986 (1st Cir. 1995); *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994)).  Thus, an officer who is

10  "pursuing his own goals and [i]s not in any way subject to control [by his employer]," does not act

11  under color of law, unless he "purport[s] to or pretend[s] to do so." *Van Ort*, 92 F.3d at 838 (internal

12  quotation marks omitted).

13       Plaintiff claims that his abuses were suffered at the hands of Jagels, Leddy, Tauzer, Rogers,

14  Buck, Patterson, and Fitts when they were attending gatherings while they were on duty, during

15  breaks, and after work.  (TAC at 14:23-26 - 15:2-13.)  However, this alone is insufficient to plead

16  that they acted under the "color of law."  Even acts committed by officials on duty will not be

17  considered "under color of law" unless they are related to the performance of the defendant's official

18  duties.  *Van Ort*, 92 F.3d at 838 ("[A]cts committed by a police officer even while on duty and in

19  uniform are not under color of state law unless they are in some way related to the performance of

20  police duties." (quoting *Gibson v. City of Chi.*, 910 F.2d 1510, 1516 (7th Cir. 1990))).

21       Here, defendant Jagels and Leddy are alleged to be Kern County District Attorneys, Tauzer

22  was an assistant district attorney, Buck was the Kern County Personnel Board director, Rogers was

23  a California State Senator, Patterson was the Chief of the Bakersfield Police Department, and Fitts

24  was employed as the Bakersfield Police Department Commissioner.  (TAC at 4-6, ¶¶ 3, 4, 6, 9, 16,

25  17, 19.)  There is no indication that these defendants were acting within the scope of their

26  employment or under color of state law when they allegedly physically and sexually abused Plaintiff.

27  Regardless of whether the conduct complained of occurred while these defendants were at work, the

28  alleged acts of sexual and physical abuse suffered by Plaintiff are simply unrelated to the

performance or within the scope of these defendants' official duties. Therefore, the alleged misconduct can only be attributed to these defendants as private citizens performed for their own personal reasons and motivations. As such, Plaintiff has not adequately alleged that these defendants acted under the color of state law, and a Section 1983 claim against them is not cognizable.

### ii.    Using Government Positions to Exert Influence and Control

A government official will be held to have acted under color of law when he uses his government position to "exert influence and physical control" over a plaintiff. *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 480 (9th Cir. 1991) (finding that a state Employment Security Officer, who used the promise of job opportunities to bring plaintiffs to his office, where he sexually assaulted them, acted under color of law).

Plaintiff claims Jagels, Leddy, Tauzer, Rogers, Buck, Patterson, and Fitts used their government positions to remove Plaintiff from SFBH to facilitate the alleged sexual and physical abuse. (TAC at 16:18-26.) Plaintiff avers that certain unspecified LOB Defendants used their government and political influences and the threat of political ramifications to discourage reports of the abuse, indemnify the acts of other LOB members, and shield them from prosecution. (*See* TAC at 17:15-26 - 18:2-3.) Plaintiff additionally contends that Leddy, Jagels, Buck, Fitts, and Tauzer "frequently boasted of their political and governmental clout and authority to elude justice and discredit Plaintiff's and other youth's good faith reports of sexual and physical abuse." (TAC at 17:8-14.)

Plaintiff's vague and conclusory assertions are insufficient to adequately set forth facts indicating that these defendants were acting under the color of state law when they allegedly harmed Plaintiff. Plaintiff has not explained how any of these defendants' positions as District Attorney, Assistant District Attorney, California State Senator, Kern County Personnel Board Director, Chief of Bakersfield Police Department, or Bakersfield Police Department Commissioner were used to remove him from SFBH. Further, Plaintiff has not explained what actions any of these defendants took that constituted the use of political influence, how these actions were related to these defendants' official positions, against whom the political influence was exercised, or what political ramifications were threatened. Plaintiff's assertions are far too vague to indicate that the defendants

acted under the color of state law by using their government positions to exert influence and control. *See Twombly*, 550 U.S. at 555 (factual allegations must be enough to raise a right to relief above a speculative level).

Plaintiff alleges that Buck "often discouraged reports of his clandestine lifestyle on account of his employment as KCPB's Director" (TAC at 14:20-22), but this does not adequately explain how Buck's position as KCPB's Director was used to discourage these reports. While a detailed factual account is not necessary, Plaintiff must offer sufficient allegations to support a reasonable inference that Buck used his official position to exert influence or control over Plaintiff. *See Iqbal*, 129 S. Ct. at 1949 (plaintiff must state a claim that is plausible on its face; plausibility requires plaintiff to plead facts that allow court to draw reasonable inference that defendant is liable for the misconduct alleged).

Finally, Plaintiff claims that those who could not be silenced through political influence were murdered by LOB members. (*See* TAC at 16:24-26 - 17:2-3 ("When government or political influence could not accomplish these objectives, smorgasbords of murder were un-leashed to silence victims of the revelation of LOB's dispicable [sic] deeds.").) Plaintiff does not state precisely whom he is accusing of committing these murders, nor does this allegation have any color of law implications. Without supporting factual allegations, the Court cannot find that the complaint supports a color of law inference in this regard. Again, Plaintiff's Section 1983 claims against these defendants are not cognizable because they lack factual allegations indicating that these defendants acted under the color of state law during the time the alleged wrongdoings were committed.

### c.     Non-Government Actors

#### i.     Individual Defendants

A purely private actor may be liable for his misconduct in state court, but his conduct is not actionable under Section 1983, regardless of how egregious that conduct may be. *Ouzts v. Md. Nat'l Ins. Co.*, 505 F.2d 547, 551 (9th Cir. 1974). However, there are four ways that a private actor may be found to have acted under color of law: (1) performing a traditionally public function; (2) acting jointly with the government; (3) acting under governmental compulsion or coercion; or (4) there is a governmental nexus. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). Additionally, a

"private person acts 'under color of' state law when engaged in a conspiracy with state officials to deprive another of federal rights." *Tower v. Glover*, 467 U.S. 914, 920 (1984) (citing *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)).

Plaintiff claims Harper, Elias, Tarver, and Fritts were members of LOB and, as such, were parties to Plaintiff's physical and sexual abuse. None of these defendants is alleged to have been employed by the state or to have held public office. As explained, *supra*, private parties will only be proper defendants under Section 1983 if there is a sufficient connection between their action and state authority. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

Plaintiff appears to assert that Harper's position as a campaign manager is a government position. (*See* TAC ¶ 20.) Plaintiff claims that Harper used his government position to remove Plaintiff from SFBH. However, there are no facts indicating that Harper's position as a campaign manager was a government position. Further, Plaintiff does not assert how Harper used his position to remove Plaintiff from SFBH. Thus, there are no facts sufficient to show that Harper acted under the color of state law.

Plaintiff claims that Tarver and Elias were allowed to remove him from SFBH "as private parties acting in concert with government actors." (TAC at 13:9-20.) Plaintiff fails to state what actions Tarver, Elias, or Harper took that allowed them to remove Plaintiff from SFBH and, more particularly, how these defendants acted in concert with governmental actors to accomplish this. There are simply no facts pled to indicate that Tarver and Elias were acting in concert with government actors such that they were acting under the color of state law.

Plaintiff claims that the abuse he suffered occurred while Harper, Tarver, Elias, and Fritts were at gatherings they attended while they were on duty, during breaks, and after work. However, because none of these defendants is alleged to have held a governmental position, whether or not they were on duty is immaterial. Plaintiff also claims that these defendants knew the abuse was occurring, had a duty to stop the abuse, but did not. Plaintiff has not adequately set forth how these defendants were under an affirmative duty, as private actors, to protect him. Plaintiff has, therefore, failed to state a cognizable Section 1983 claim against Harper, Tarver, Elias, or Fritts.

### ii.     The Bakersfield Californian Newspaper

The Bakersfield Californian Newspaper is alleged to be a privately owned business entity. (TAC ¶ 21.)  Generally, a private business has no authority to act under color of state law; however, such action can be deemed to be under color of law if there is a sufficient connection between the business entity and the state.  *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).

Plaintiff alleges that the newspaper was "jointly acting and conspiring with state or local government actors in executing the complained of actions under color of law." (TAC at 18:20-25.) Plaintiff claims that "Alfred 'Ted' Fritts as co-owner/publisher, fraudulently used Bakersfield Californian Newspaper to dilute associated stories in which to deceive and mislead the public and in deliberate attempts to protect LOB."  (TAC at 17:4-8.)  The fact that Fritts, a private citizen, allegedly used his position with the newspaper to "dilute associated stories" does not set forth joint action between government actors and the newspaper such that the newspaper can be found to have acted under the color of law.  Plaintiff does not state a cognizable Section 1983 claim against the Bakersfield Californian Newspaper.

### iii.     Eli's Clock Emporium

Eli's Clock Emporium is alleged to be a privately owned business entity.  (TAC ¶ 22.) Generally, a private business has no authority to act under color of state law; however, such private action can be deemed to be under color of law if there is a sufficient connection between the business entity and the State.  *See Brentwood*, 531 U.S. at 295.

Plaintiff claims Eli's Clock Emporium was a private party "jointly acting and conspiring with state or local government actors in executing the complained of actions under color of law." (TAC at 18:18-25.)  Plaintiff's allegations are vague and conclusory.  Plaintiff claims Eli's Clock Emporium "acted as a justifiable pretext to remove Plaintiff from custody" but does not provide sufficient facts to indicate an agreement or joint action between state actors and Eli's Clock Emporium.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.  Plaintiff fails to state a cognizable Section 1983 claim against Eli's Clock Emporium.

### d.   Private Actors' Conspiracy with State Actors

To assert a conspiracy, Plaintiff must allege (1) an agreement between the government and private actors to commit a deprivation of Plaintiff's constitutional rights, and (2) an actual violation of Plaintiff's constitutional rights. *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999); *see Hart v. Parks*, 450 F.3d 1059 (9th Cir. 2006); *Franklin*, 312 F.3d at 441; *United Steelworkers of Am. v. Phelps Dodge Corp*., 865 F.2d 1539, 1540-41 (9th Cir. 1989). Conclusory allegations of a conspiracy without factual support are not sufficient to maintain a claim under Section 1983. *See Margolis v. Ryan,* 140 F.3d 850, 853 (9th Cir. 1998) (plaintiff must show an agreement among conspirators to deprive plaintiff of civil rights)*; Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980) (conclusory allegations of conspiracy are insufficient to support a claim under Section 1983).

Plaintiff claims Harper, Elias, Tarver, and Fritts were private parties "conspiring with state or local government actors in executing the complained of actions under color of law." (TAC at 18:22-25.) Plaintiff's conspiracy allegations are extremely vague. He essentially asserts that those members of LOB who were in positions of power through their employment as political or government officials used that power to discourage others from reporting the abuse, thereby allowing the abuse to continue and protecting the LOB members from prosecution. At best, this allegation is conclusory and provides no facts indicating an agreement between government actors and private actors. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ," *Twombly*, 550 U.S. at 555, and Plaintiff's claim of a conspiracy does not rise above the level of speculation.

### e.   Claims Against Deceased Defendants and Their Estates

Plaintiff claims that Tauzer, Tarver, Fitts, and Buck are deceased as a result of their involvement with LOB. (TAC at 19:2-10.) Plaintiff indicates that Leddy and Fritts are also deceased. (TAC ¶¶ 5, 24.) Plaintiff sues the estates as "private entities subject to liability for constitutional torts" of these individuals. (TAC ¶¶ 5, 7, 10, 18, 24, 30.) Plaintiff also sues Virginia Ginger Moorhouse and Donald H. Fritts as private party successors to Alfred 'Ted' Fritts. (TAC ¶¶ 25, 26.)

The factual allegations of the complaint do not establish that any of these deceased individuals were acting under the color of law when the alleged conduct occurred, and Plaintiff has not stated a cognizable Section 1983 claim against them.  Because Plaintiff has failed to assert a cognizable claim against Tauzer, Tarver, Buck, Leddy, Fitts, or Fritts, their estates are not proper defendants.  Similarly, because Virginia Moorhouse and Donald Fritts are only alleged to be liable through Alfred 'Ted' Fritts, they are also not proper defendants.

### f.    Conclusion

For these reasons, the Court finds that the complaint does not set forth cognizable claims against Defendants Tauzer, Tarver, Buck, Jangles, Leddy, Fitts, Fritts, Patterson, Harper, Rogers, Virginia Ginger Moorhouse, Donald H. Fritts, Elias, the estates of any deceased defendants, Eli Clock Emporium, or the Bakersfield Californian Newspaper.  Plaintiff has been previously informed of these deficiencies; although Plaintiff has been given three opportunities to cure these deficiencies, he has failed to do so.  Therefore, the Court recommends that the Section 1983 claims against these Defendants be dismissed with prejudice.

### 2.    Constitutional Deprivation Under the Fourteenth Amendment

As set forth above, all the actors Plaintiff asserts harmed him were acting in their capacity as private citizens, rather than as state or government actors, when the alleged conduct occurred.  Generally, the state has no duty to protect its citizens against the actions of private individuals.  *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989).  However, there are two exceptions to this general rule.  *Id.* at 197.  First, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes some responsibility for [that person's] safety and general well-being." *Id*. at 199-200.  "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it imposed on his freedom to act on his own behalf." *Id.* at 200.  This has been dubbed the "special relationship" exception.  *See*, *e.g., Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007).  The second exception exists where the state affirmatively places the plaintiff in a dangerous situation – the "danger creation exception." *Id.*; *Wood v. Ostrander*, 879 F.2d 583, 589-90 (9th Cir. 1989).

1   Plaintiff has adequately set forth a special relationship with the state.  Plaintiff alleges that

2   he was placed under the care of SFBH after Plaintiff's mother was deemed an unfit parent due to her

3   alcoholism.  (TAC at 11:11-17.)  He asserts that he was also placed under the care of or supervised

4   by Rockholt and Brown, among others.  (*Id*.)  Thus, Plaintiff alleges that a "special relationship"

5   exists because the State took him into custody as a child and placed him in a foster home.  Therefore,

6   the Constitution imposes some responsibility for Plaintiff's safety and general well-being.

7   The Court must still determine, however, the legal standard for culpability to be applied to

8   determine whether defendants' conduct violates the Due Process Clause of the Fourteenth

9   Amendment.  To that end, the Court will apply the deliberate indifference standard to Plaintiff's

10  claims – the same standard of culpability used in institutional settings.  *See Farmer v. Brennan*,

11  511 U.S. 825, 834 (1994).  Adopting the deliberate indifference standard here is appropriate since

12  the theories of liability are similar.  Just as a prison official's deliberate indifference toward a threat

13  of harm from a private individual (another inmate) can violate an inmate's constitutional rights, a

14  state official's deliberate indifference toward a threat of harm from a private individual can violate

15  the constitutional rights of a minor placed in the State's custody.  Deliberate indifference is also the

16  standard used in claims premised on the second *DeShaney* exception, i.e., situations where a state

17  official affirmatively places the plaintiff in a dangerous situation.  *See Kennedy v. City of Ridgefield*,

18  439 F.3d 1055, 1062-64 (9th Cir. 2006).

19  Under the deliberate indifference standard, a plaintiff must plead facts indicating that a state

20  official disregarded a known or obvious consequence of his actions.  *Board of Cnty. Comm'rs v.*

21  *Brown*, 520 U.S. 397, 410 (1997).  "[D]eliberate indifference' is a stringent standard of fault . . . ."

22  *Id.*  "[T]he official must both be aware of facts from which the inference could be drawn that a

23  substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at

24  837.  Merely alleging that a person was in state custody and suffered harm while in state custody is

25  not sufficient to establish that state officials acted with deliberate indifference and violated their

26  constitutional obligation to protect that person from harm.

27

28

With regard to his involuntary custody, Plaintiff pled the following:

> Following the 1978 murder of Tarver and authorities suspicions of Plaintiff's involvement, Plaintiff was detained and made a ward of the court. Following his release and sustained petition rendering Plaintiff's biological alcoholic mother unfit to care and protect Plaintiff, Plaintiff against his will was placed under the custody of the state and care of SFBH, Rockholt, KCPD, Brown, CPS, BPD and certain DOES for his safety and welfare. Plaintiff's mother[,] in relinquishing his custody to the state[,] insisted and was assured by SFBH, Rockholt, KCPD, Brown, CPS[,] and certain [Does] that Plaintiff would be placed safely and remain cared [afterward]. This acquisition of custody was affirmative government action which gave rise to and created a "special relationship" between the State, CPS, City of Bakersfield, Kern County, CPS, Rockholt, SFBH, KCPD, Brown, BPD, Fitts, Patterson and certain other [Does] in which Plaintiff as a helpless minor became a ward of the court, was placed into a position of vulnerability and [was] reasonably and fully dependent and reliant on the above defendants for protection, safety, well-being[,] and personal security.

(TAC11:8-26 -12:2-6.)

Plaintiff asserts that he was placed under the care of the state, SFBH, Rockholt, KCPD, Brown, CPS, BPD, "and certain Does." (TAC at 11:8-17.) Plaintiff asserts that he informed SFBH, Rockholt, and Brown of the assaults he suffered as a result of being taken out of SFBH by various members of LOB, but he "was completely rebuffed." (TAC at 14:9-11.) This allegation suggests that SFBH, Rockholt, and Brown were aware of the sexual abuse that was occurring and that allowing Defendants Harper, Rogers, Elias, or other Does to take Plaintiff out of SFBH endangered his health and safety in a deliberately indifferent manner. Moreover, Rockholt and Brown are asserted to have been responsible for Plaintiff's placement and care, and it can be inferred that Rockholt and Brown were acting within the scope of their job duties at the Department of Probation by placing Plaintiff at SFBH and overseeing his care. This is especially so because Plaintiff alludes to being in custody as a juvenile offender for alleged participation in the murder of Defendant Tarver. (*See* TAC at 11:8-10 ("Following the 1978 murder of Tarver and authorities['] suspicion of plaintiff['s] involvement, plaintiff was detained and made a ward of the court.").) Plaintiff's allegation of KCPD employees' involvement with his placement at SFBH is at least plausible in this regard. Further, SFBH is alleged to have been contracted with the state, Kern County, and the City of Bakersfield to provide these services to youths in state custody. (TAC at 7, ¶ 21.) The Court finds that Plaintiff has adequately stated a cognizable Section 1983 claim against SFBH, Rockholt, and Brown.

With regard to Patterson and Fitts, Plaintiff's allegations are inconsistent and conclusory. For example, at times Plaintiff indicates that Patterson and Fitts were not involved in Plaintiff's care or placement at SFBH, but contrarily asserts that they were responsible for allowing Plaintiff to be taken from SFBH.  (*Compare* TAC at 11:13-16 *with* TAC at 13:9-13.)  There is also no factual indication how the Bakersfield Police Chief (Patterson) and the Police Commissioner (Fitts) would have had any contact with Plaintiff in terms of his placement or care at SFBH within the scope of their job duties such that any failure to protect on their part could be attributed to the state. Patterson's and Fitts' participation in the events is conclusory and ambiguous at best and inconsistent at worst.  Plaintiff does not adequately set forth a Section 1983 claim against them in this capacity.

### 3.    *Monell* Claims Against Municipalities

Neither state agencies nor state officials acting in their official capacities are considered "persons" liable under Section 1983 because the Eleventh Amendment protects states from being sued in federal court.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).   Local government agencies and officials, on the other hand, are considered "persons" under Section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  "[A] municipality cannot be held liable *solely* because it employs a tortfeasor  – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Id*. at 691.

Instead, municipalities are liable only if they have implemented a policy or custom that directly results in Plaintiff's injury.  *Id.* at 690.  A policy can be implemented in two ways.  First, it can be officially approved by the municipality's governing body.  *Id*.  Second, even when the policy has not been formally adopted, a policy will be found to exist where a custom results in an unconstitutional deprivation of rights.  *Id.* at 690-91.  A custom is a "widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law."  *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation marks omitted)).

### a.    The County of Kern and City of Bakersfield

Plaintiff asserts the County of Kern and the City of Bakersfield were involved in covering up or otherwise ignoring Plaintiff's reports of sexual abuse to county and city officials.

To adequately allege a claim pursuant to *Monell*, Plaintiff must allege facts indicating "(1) that he possessed a constitutional right of which he was deprived; (2) that the [municipality] had a policy; (3) that the policy 'amounts to deliberate indifference' to [Plaintiff's] constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation,'" *Anderson v. Warner*, 451 F.3d 1063 (9th Cir. 2006) (citing *Oviatt v. Pearce*, 954 F.2d 1457, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989))).

Plaintiff alleges that the City of Bakersfield "would occasionally observe Plaintiff and Buck and others engaged in illicit sexual acts at a local public park and would ignore these public sexual abuses." (TAC at 15:15-20.)  These allegations do not relate to the municipality but to employees within the municipality.  These allegations are essentially asserting vicarious liability for actions of employees through the theory of respondeat superior, which does not attach under Section 1983. *Monell*, 436 U.S. at 690.

Plaintiff claims that Kern County and the City of Bakersfield had deficient policies and customs that allowed the alleged abuses to continue.  (TAC at 21.)  Plaintiff does not state which of the fourteen alleged deficient policies are attributable to the County of Kern or the City of Bakersfield.  Plaintiff has not alleged that any policy he identified has been officially adopted by the County of Kern or the City of Bakersfield.  Therefore, the issue is whether there was a custom or practice, not formally adopted, but long followed nonetheless. *See Delia v. City of Rialto*, 621 F.3d 1069, 1081 (9th Cir. 2010).

Plaintiff asserts that, "prior to, contemporaneous with and subsequent to the interval of 1977 through 1981, Defendants . . . promulgated, implemented, maintained, tolerated, ratified, tacitly encouraged, authorized and condoned" at least fourteen different policies including, but not limited to, the failure to train and educate all officers and personnel in applicable laws and detection of child abuse, failure to adequately supervise employees, failure to properly discipline employees refusing to adhere to and enforce the law, and failing to investigate complaints and claims of physical and sexual abuse.  (TAC at 22-23.)  Plaintiff asserts that the municipalities' failures and refusals to investigate and review past incidents of misconduct constituted deliberate indifference to his rights. (TAC at 24:7-11.)  Plaintiff also asserts that these customs and policies were the direct and

1  proximate causes of the harms that befell him.  (TAC at 24: 16-19.)

2      While some of Plaintiff's allegations are conclusory in nature, Plaintiff has adequately

3  articulated at least one policy – that Kern County and the City of Bakersfield failed to train

4  employees to report and detect sexual and physical abuses to children in foster care settings, among

5  other policies.  *See City of Canton*, 489 U.S. at 389 (a failure to train may be a deficient policy or

6  custom "where a municipality's failure to train its employees in a relevant respect evidences a

7  'deliberate indifference' to the rights of its inhabitants").  Due to this, his reports of continued sexual

8  abuse while in the care of the state went unheeded and, as a result of these policies, Plaintiff was

9  exposed, deliberately and indifferently, to additional and continued harm.  (*See* TAC at 24:7-11

10  ("These Defendant[s'] failures and refusals to comprehensively investigate and review many past

11  incidents of same or similar misconducts [sic] evidences their conscious and complete disregard and

12  indifference to Plaintiff's constitutional rights."), 18:13-18 ("Reasonable diligence on the part of any

13  defendant would have substantially decreased and in many instances prevented, the victimizations

14  and debris of carnage produced . . . .").)  This is more than a bare allegation that Kern County and

15  the City of Bakersfield failed to train its employees in such a way as to violate Plaintiff's

16  constitutional rights; rather, Plaintiff identifies a particular area in which officials were trained

17  inadequately, e.g., responding to, and preventing child abuse of, children in foster care or otherwise

18  in the care of the state.  Plaintiff asserts that these particular policies and customs were the driving

19  force behind the constitutional violations he suffered because, if the employees had been properly

20  trained to report and deal with abuse, they would have been able to prevent the additional harm that

21  Plaintiff suffered.  Given these allegations – the truth of which the Court must assume at the pleading

22  stage – Plaintiff has adequately stated a cognizable Section 1983 claim against the County of Kern

23  and the City of Bakersfield.

24              **b.    Supervisor Liability**

25      To establish supervisor liability, Plaintiff must provide facts to show that the supervisor

26  either: (1) was personally involved in the alleged violation of Plaintiff's constitutional rights; (2)

27  knew the violations were occurring and failed to act to prevent them; or (3) promulgated or

28  implemented a deficient policy that was itself the moving force for the violation of constitutional

rights. *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991). For a supervisor to be liable for implementing an official policy, the supervisor must be "an official who 'possesses final authority to establish [local government] policy with respect to the [challenged] action . . . .'" *Thompson v. City of L.A.*, 885 F.2d 1439 (9th Cir. 1989) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1968) (plurality opinion)). Supervisors can be sued directly, and in their individual capacity, for their "own culpable action or inaction in the training, supervision, or control of his subordinates." *Larez*, 946 F.2d at 646 (quoting *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987)).

Plaintiff claims supervisory liability against Jagels, Leddy, Tauzer, Buck, Brown, Patterson, Fitts, and Rogers. While Plaintiff contends that these defendants promulgated or implemented a deficient policy that was itself the moving force for the violation of constitutional rights, he has not alleged under what authority each of these defendants had the power to make policies for their individual departments, nor does he state which of the fourteen alleged deficient policies are attributable to each separate defendant. Therefore, Plaintiff has not adequately set forth how these supervisors acted within the scope of their jobs to implement deficient policies.

Plaintiff also avers supervisory liability under the premise that Jagels, Leddy, Tauzer, Buck, Patterson, and Fitts were personally involved in the alleged violation of Plaintiff's constitutional rights and knew that the violations were occurring but failed to act to prevent them. As explained, *supra*, the complaint does not indicate that these defendants were operating within the scope of their employment when the alleged conduct occurred. Thus, they were private actors who are not liable under Section 1983.

## IV.  RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS the following:

1.  Plaintiff's Section 1983 claims against the Kern County Probation Department, the Kern County District Attorney's Office, the Kern County Personnel Board, the Bakersfield Police Department, and the Kern County's Child Protective Services Department be DISMISSED WITH PREJUDICE.

2.      Plaintiff's Section 1983 claims against Defendants Jagels, Leddy, Tauzer, Rogers, Buck, Harper, Elias, Tarver, Fritts, Patterson, Fitts, estates of any deceased defendant, Virginia Ginger Moorhouse, Donald H. Fritts, the Bakersfield Californian Newspaper, and Eli's Clock Emporium be DISMISSED WITH PREJUDICE;

3.      That the COURT FIND that Plaintiff states cognizable claims against Defendants Glen Brown, Sally Rockholt, San Felipe Boys Home, the City of Bakersfield, and the County of Kern;

4.      Service BE DETERMINED TO BE APPROPRIATE for the following defendants: Glen Brown, Sally Rockholt, San Felipe Boys Home, the City of Bakersfield, and the County of Kern;

5.      The Clerk of the Court BE DIRECTED to send Plaintiff five (5) USM-285 forms, five (5) summonses, an instruction sheet, a notice of submission of documents form, and one copy of the third amended complaint filed in this Court on October 12, 2010;

6.      Within thirty (30) days from the date of service of the District Judge's order, Plaintiff BE DIRECTED to complete the attached Notice of Submission of Documents and submit the completed Notice to the Court with the following documents:

a.      Completed summonses;

b.      One completed USM-285 form for each defendant for which service is deemed appropriate; and

c.      6 copies of the endorsed complaint filed in this Court; and

7.      Plaintiff BE INFORMED that Plaintiff's failure to comply with the order will result in a recommendation to dismiss this action for failure to obey this Court's order. *See* Local Rule 110.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge

1    will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C.

2    § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may

3    waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

4

5    IT IS SO ORDERED.

6    **Dated:**   **March 10, 2011**                         /s/ **Sheila K. Oberto**
                                                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28